**UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION**

THOMAS PATRICK CUPPLES,

    Petitioner,         Civil No. 2:15-CV-11620
                            HONORABLE DENISE PAGE HOOD
v.                          CHIEF UNITED STATES DISTRICT JUDGE

MITCH PERRY,

    Respondent.
_____/

**<u>OPINION AND ORDER DENYING THE PETITION FOR A WRIT OF
HABEAS CORPUS AND DENYING A CERTIFICATE OF
APPEALABILITY</u>**

Thomas Patrick Cupples, ("Petitioner"), confined at the Newberry Correctional in Newberry, Michigan, filed a petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254, through his attorney Paul D. Hudson of Miller Canfield, Paddock & Stone PLC, challenging his convictions for two counts of second-degree criminal sexual conduct (CSC), for engaging in sexual contact with a person at least 13 but less than 16 years of age, who is a member of the same household, M.C.L.A. § 750.520c(1)(b), and engaging in sexual contact with a person less than 13 years of age, M.C.L.A.§ 750.520c(1)(a). For the reasons that follow, the petition for a

1

writ of habeas corpus is DENIED.

## I. Background

Petitioner was convicted following a jury trial in the Oakland County Circuit Court. This Court recites verbatim the relevant facts relied upon by the Michigan Court of Appeals, which are presumed correct on habeas review pursuant to 28 U.S.C. § 2254(e)(1). *See e.g. Wagner v. Smith,* 581 F.3d 410, 413 (6th Cir. 2009):

> The victim in this case is defendant's stepdaughter. The victim, her mother (Reito), and her brother (Michael), lived with defendant until August 2010, at which time the victim told Reito that defendant had been sexually assaulting her. The victim, who turned 13 years old in April 2010, said that on "[m]ore than five, but ... less than 20" occasions beginning "[a]round the summer of fifth grade," defendant "would touch [her] when [she] was sleeping." The assaults would occur in her bedroom at night. The victim would awake to defendant "pulling [her] shorts aside," and defendant "would move [her] legs apart if they weren't apart," and "take [her] ankles and stretch them to the side." Defendant would expose the victim's "vaginal area," and he "touche[d her]" with "his fingers" and "rub[bed] them around on the outside of the skin, ... and then he would rub them on the inside" of her vagina for "[p]robably about five minutes." In the time leading up to when the victim revealed the abuse to Reito, she noticed that the touching had progressed and that defendant "would start rubbing [her] butt. She pretended to be sleeping during the assaults because she was "afraid [defendant] might ... attack [her,] ...or tell [her] to not ... tell anyone[,] or ... rape" her, so she "just lay there and tr[ied] not to move." When defendant stopped touching her each time, he would stand in the doorway for several minutes before leaving. The following day, the victim would "try to act as normal [sic] as possible" around defendant.

2

The victim was not aware of every occasion on which defendant assaulted her because defendant gave her "sleeping pills some days[,] and he would give [her] hot chocolate with white powder," and she did not know what the powder was. When she took the pills, which she estimated happened about three times, she would "feel drowsy," "fall asleep right away," "sle[ep] really deep," and "didn't wake up during the night." During the winter months, defendant would give the victim hot chocolate at night, about "once a week," "[m]ost of [the] time" without the victim having asked for it. The victim began to discard the hot chocolate defendant gave her when she noticed the white residue and odd taste, "[b]ut then [defendant] would always tell [her] the rule was [she] had to drink the hot chocolate no matter what[,] and [she] had to finish it.... He never told [her] a reason[;] ... she had to drink it." When she drank defendant's hot chocolate, the victim "felt sleepy ... and [would] go to sleep."

The victim also testified that defendant once gave her a "miniature bottle[ ]" of wine, telling her to drink it, and "gave [her] a shot of something" afterward. The victim did not want to drink the wine or the shot, but did anyway, "[b]ecause [defendant] told [her] to and [she] was kind of scared of him." On another occasion, when the victim was 13 years of age, defendant spoke to the victim about masturbation. The conversation took place in her bedroom, with the door closed, and lasted about 20 minutes. Defendant did not touch the victim, but "showed [her] how to rub your vaginal area to make you feel better."
\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

Reito testified that the victim approached her on the patio and told her, "I hate Tom." After their discussion wherein the victim revealed the abuse, Reito gathered the victim and Michael and left the house. Reito returned to the home two days later with a police escort to take "as much as [she] could." She returned to the house a second time on August 13, 2010, accompanied by friends and police, to collect more personal belongings. She found that the locks had been changed. With police supervision, Reito's friend replaced the lock on the front door, and they went inside. Reito saw that the victim's bedroom had been "completely

cleaned out," "[l]ike she never existed." The victim's belongings had been placed in garbage bags and moved to the garage. The family computer, which they called "[defendant's] computer," was missing, as was its monitor, and the second computer, which had previously been upstairs, was on the first floor.

A police search of the victim's room included use of an ultraviolet light, revealing bodily fluids on a section of carpet. Testing revealed the presence of semen matching a buccal swab provided by defendant.

Two jailhouse calls defendant made to his daughter from a previous marriage, Colleen Fox, as well as his sister, Candy Shinabarger were played for the jury. The first call was placed on August 12, 2010, to the marital home where Fox and Shinabarger had arrived to help defendant. Defendant repeatedly referred to "assignments," "homework that you and Tommy [Thomas Patrick Cupples, Jr., defendant's son] and [Shinabarger] have to accomplish tonight," and a "list of things to do," which Fox and Shinabarger were to discuss with defendant's attorney. He asked Shinabarger if she was "clear that they have to be done tonight," and she said, "Yes, the first thing we're going to do is move the comput[—,]" and defendant interrupted, saying, "Don't, you can't, this is all recorded." He then said, "I just need to know that you [two] understand what your homework is." She said, "We do, we do."

The second call was placed on the morning of August 13, 2010, to the same location as the first. The conversation provided, in pertinent part:

> Shinabarger: ... I've done a lot of laundry and washed [the] quilts [t]hat I found in that back closet.
>
> The Defendant: Did you get the other assignments completed?
>
> Shinabarger: Oh, yeah, and[,] ah.

4

> The Defendant: I mean like every square inch of ...
>
> Shinabarger: Yep.
>
> The Defendant: Cleaning done?
>
> Shinabarger: Yep, everything's done[,] and ah, it's all prepared for our company this weekend and it's also prepared for [Tommy] when he comes out here to be with you.
>
> The Defendant: Oh, outstanding.
>
> Shinabarger: Yeah, yep, so I've taken[,] ah, you know[,] things to the basement again, you know[,] bagged up[,] so ...

Jerry DeRosia, a forensic computer investigator with the Oakland County Sheriff's Office, testified that he received the computer that was taken from the den in the marital home. He noticed that the hard drive was "very clean," meaning that "most of the unallocated space [on the hard drive] seemed to be zeroed out." DeRosia expected to find more data in "temporary internet files" than he actually did, considering that the computer had been used regularly by four people, each of whom used the internet. DeRosia uncovered "a lot of pornography," including duplicates, comprising "close to half" of all of the images on the computer. DeRosia noticed several "Flash cookies" on the computer, which are small files associated with Adobe Flash Player that are routinely placed on a computer without the user's knowledge when the user visits webpages that feature Flash software. DeRosia found Flash cookies for sleepassault.com, depicting "teens being ... sexually assaulted while they sleep and don't wake up," as well as mystepdadmademe.com, depicting "girls having sex with their stepdads," featuring images of a "[y]oung adult" female and an "older" male.

*People v. Cupples*, No. 304393, 2013 WL 2120276, at *1–3 (Mich. Ct. App.

May 16, 2013).

Subsequent to petitioner's trial, appellate counsel filed a motion for a new trial and a motion to remand for a *Ginther*[1] hearing on petitioner's ineffective assistance of trial counsel claims. The trial court denied petitioner's motion for a new trial and for an evidentiary hearing on January 6, 2012. *People v. Cupples,* No. 10-233457-FC (Oakland County Circuit Court, Jan. 6, 2012).

Petitioner's conviction was affirmed on appeal. *People v. Cupples*, 2013 WL 2120276, at *1, 13 (Mich. Ct. App. May 16, 2013); *lv. den.* 495 Mich. 939, 843 N.W.2d 213 (2014).

Petitioner seeks a writ of habeas corpus on the following grounds:

I. Deficient Performance 1: Defense Counsel Failed to Make an Obvious Winning Objection to the Prosecution Expert's False Testimony that Cupples Had Visited Pornographic Websites Depicting Sexual Assault of Step-Daughters and Sleeping Victims.

II. Deficient Performance 2: Defense Counsel Failed to Shield Cupples' Computer-Forensics Expert from Impermissible questioning.

III. Prejudice resulting from trial counsel's errors.

## II. Standard of Review

---

[1] *People v. Ginther*, 390 Mich. 436, 443; 212 N.W.2d 922 (1973).

28 U.S.C. § 2254(d), as amended by The Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA), imposes the following standard of review for habeas cases:

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim–
>
> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

A decision of a state court is "contrary to" clearly established federal law if the state court arrives at a conclusion opposite to that reached by the Supreme Court on a question of law or if the state court decides a case differently than the Supreme Court has on a set of materially indistinguishable facts. *Williams v. Taylor*, 529 U.S. 362, 405-06 (2000). An "unreasonable application" occurs when "a state court decision unreasonably applies the law of [the Supreme Court] to the facts of a prisoner's case." *Id.* at 409. A federal habeas court may not "issue the writ simply because that court concludes in its independent judgment that the

7

relevant state-court decision applied clearly established federal law erroneously or incorrectly." *Id.* at 410-11.

The Supreme Court explained that "[A] federal court's collateral review of a state-court decision must be consistent with the respect due state courts in our federal system." *Miller-El v. Cockrell*, 537 U.S. 322, 340 (2003). The "AEDPA thus imposes a 'highly deferential standard for evaluating state-court rulings,'and 'demands that state-court decisions be given the benefit of the doubt.'" *Renico v. Lett*, 559 U.S. 766, 773 (2010) ((quoting *Lindh v. Murphy*, 521 U.S. 320, 333, n. 7 (1997); *Woodford v. Viscotti*, 537 U.S. 19, 24 (2002)(*per curiam*)). "[A] state court's determination that a claim lacks merit precludes federal habeas relief so long as 'fairminded jurists could disagree' on the correctness of the state court's decision." *Harrington v. Richter*, 562 U.S. 86, 101 (2011)(citing *Yarborough v. Alvarado*, 541 U.S. 652, 664 (2004)). In order to obtain habeas relief in federal court, a state prisoner is required to show that the state court's rejection of his claim "was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." *Harrington,* 562 U.S. at 103. A habeas petitioner should be denied relief as long as it is within the

8

"realm of possibility" that fairminded jurists could find the state court decision to be reasonable. *See Woods v. Etherton,* 136 S. Ct. 1149, 1152 (2016).

### III. Discussion

### The ineffective assistance of counsel claims.

In his first claim, petitioner contends that he was denied the effective assistance of trial counsel when trial counsel failed to object to Detective Jerry DeRosia's expertise and testimony given in connection with flash cookies found on petitioner's computer. In his second claim, petitioner alleges that counsel was ineffective by failing to throughly investigate his expert witness, Larry Dalman, to avoid impeachment in connection with prior sexual harassment claims which resulted in disciplinary actions taken in connection with this witness.

To show that he or she was denied the effective assistance of counsel under federal constitutional standards, a defendant must satisfy a two prong test. First, the defendant must demonstrate that, considering all of the circumstances, counsel's performance was so deficient that the attorney was not functioning as the "counsel" guaranteed by the Sixth Amendment. *Strickland v. Washington*, 466 U.S. 668, 687 (1984). In so

doing, the defendant must overcome a strong presumption that counsel's behavior lies within the wide range of reasonable professional assistance. *Id*. Petitioner must overcome the presumption that, under the circumstances, the challenged action might be sound trial strategy. *Strickland,* 466 U.S. at 689. Second, the defendant must show that such performance prejudiced his defense. *Id*. To demonstrate prejudice, the defendant must show that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland,* 466 U.S. at 694. "*Strickland*'s test for prejudice is a demanding one. 'The likelihood of a different result must be substantial, not just conceivable.'" *Storey v. Vasbinder*, 657 F.3d 372, 379 (6th Cir. 2011)(quoting *Harrington*, 562 U.S. at 112). The Supreme Court's holding in *Strickland* places the burden on the defendant who raises a claim of ineffective assistance of counsel, and not the state, to show a reasonable probability that the result of the proceeding would have been different, but for counsel's allegedly deficient performance. *See Wong v. Belmontes*, 558 U.S. 15, 27 (2009).

On habeas review, "the question 'is not whether a federal court believes the state court's determination' under the *Strickland* standard

'was incorrect but whether that determination was unreasonable-a substantially higher threshold.'" *Knowles v. Mirzayance*, 556 U.S. 111, 123 (2009)(quoting *Schriro v. Landrigan*, 550 U.S. 465, 473 (2007)). "The pivotal question is whether the state court's application of the *Strickland* standard was unreasonable. This is different from asking whether defense counsel's performance fell below *Strickland's* standard." *Harrington v. Richter*, 562 U.S. at 101. Indeed, "because the *Strickland* standard is a general standard, a state court has even more latitude to reasonably determine that a defendant has not satisfied that standard." *Knowles,* 556 U.S. at 123 (citing *Yarborough v. Alvarado*, 541 U.S. at 664). Pursuant to the § 2254(d)(1) standard, a "doubly deferential judicial review" applies to a *Strickland* claim brought by a habeas petitioner. *Id.* This means that on habeas review of a state court conviction, "[A] state court must be granted a deference and latitude that are not in operation when the case involves review under the *Strickland* standard itself." *Harrington,* 562 U.S. at 101. "Surmounting *Strickland's* high bar is never an easy task." *Id.* at 105 (quoting *Padilla v. Kentucky*, 559 U.S. 356, 371 (2010)).

Petitioner brought his ineffective assistance of counsel claims before the trial court in his motion for a new trial. In denying petitioner's motion,

the trial court ruled that even assuming that trial counsel was deficient, petitioner failed to show prejudice which would have resulted in a different outcome of his case, but for trial counsel's deficiency.

Although the Michigan Court of Appeals found that trial counsel was ineffective by failing to raise an objection to DeRosia's cookie testimony, in that it would have been sustained by the trial court, the Court ruled instead that counsel's deficiencies did not prejudice petitioner. In quoting the trial court findings, the Michigan Court of Appeal reasonably found that there was overwhelming evidence presented at trial with no probability of a different outcome had DeRosia's cookie testimony been excluded at trial, as follows:

> In denying defendant's motion for new trial, the trial court noted:
>
>> Defendant takes issue with DeRosia's testimony that the presence of the flash cookies necessarily "means" that "somebody went to that site and viewed something that required a flash player to make." This testimony, Defendant argues, was incorrect, as Defendant's computer could have acquired the flash cookies by visiting another site that included content, such as banner advertisements using the flash system, from the "mystepdadandme.com" and "sleepassault.com." Thus, the testimony could have been excluded if a proper objection had been made.
>>
>> Defendant's objections to the testimony about what the presence of the flash cookies "means" appears to

be legitimate, as it appears that the presence of the flash cookies does not necessarily imply that somebody went to "that site" and viewed its contents. This error also calls into question Detective DeRosia's qualifications to testify on this issue.

However, the trial court went on to conclude:

> But evidence regarding the flash cookies was only a small part of the prosecution's case. In addition, the prosecution provided testimony from the victim describing the assaults, as well as credible objective evidence (such as the semen recovered from the victim's bedroom) corroborating the victim's version of events and evidence of highly incriminating statements made by Defendant during his telephone calls from jail. Moreover, there is no claim that Detective DeRosia was not qualified to testify regarding other aspects of Defendant's computer, including indication that it had been "cleaned" to remove indications of how it had been used before it was turned over to authorities. Finally, the absence of evidence regarding flash cookies would not have undermined the credibility of any of the prosecution's other evidence.
>
> In this context, the Court does not see even a remote possibility that the jury would have acquitted Defendant if his trial counsel had successfully objected to Detective DeRosia's testimony regarding the flash cookies, much less the "reasonable probability" of such a result required to obtain relief on this basis. Rather, even if defense counsel was negligent in failing to object in this regard, such negligence cannot be said to call into question the reliability of the jury's verdict in this case. Thus, Defendant is not entitled to relief on this basis.

*People v. Cupples*, 2013 WL 2120276, at * 8-9.

A reviewing court "need not determine whether counsel's performance was deficient ... [i]f it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice ....". *Strickland,* 466 U.S. at 697. Thus, if an alleged error by counsel was not prejudicial, a federal court need not determine whether counsel's performance was constitutionally deficient. *See McMeans v. Brigano,* 228 F.3d 674, 686 (6th Cir. 2000)(citing to *Strickland,* 466 U.S. at 697). The critical inquiry for the Court in this case is whether petitioner was prejudiced by counsel's deficiencies in light of the evidence presented at trial.

Petitioner is unable to show that he was prejudiced by trial counsel's deficiencies. The Michigan Court of Appeals, in deference to the trial court's findings, reasonably concluded that there was overwhelming testimony and physical evidence entered at petitioner's trial to sustain a conviction against petitioner, in spite of the instances of trial counsel's failure to object to the cookie testimony provided by DeRosia, and trial counsel's failure to investigate before trial the background of his expert witness. Furthermore, the prosecution had a strong case against

petitioner as delinated in the findings made by the Michigan Court of Appeals. *See Cupples,* 2013 WL 2120276, at *10.

Although, the trial court judge found that DeRosia's flash-cookie testimony "could have been excluded if a proper objection had been made," petitioner would not be able to satisfy the prejudice prong of *Strickland* due to amount of overwhelming evidence present by the prosecutor. *Id.* at *9.

Likewise, the trial court judge found that assuming that the prosecutor impeached the defense expert Dalman, so as to provide credibility to Derosia's testimony, the only difference in testimony given by the two experts pertained to the flash-cookies on petitioner's computer and this piece of evidence was but a small part of the prosecutor's closing argument.

> The only substantial disagreement that Dalman had with Detective Derosia involved the implications that could be drawn from the discovery of the flash cookies on Defendant's computer. As discussed above, however, there is not a reasonable probability that the result of the trial would have been different if the evidence of the flash cookies had not been introduced. If so, it also stands to reason that there is not a reasonable probability that the result of the trial could have been different if Defendant's expert had not been impeached in this regard. Thus, Defendant cannot establish this element of his ineffective assistance of counsel claim based on the introduction of the impeachment evidence.

*People v. Cupples,* No. 10-233457-FC, *6 (Oakland County Cir. Ct. Jan. 6, 2012).

Due to the substantial amount of evidence presented, exclusion of all cookie testimony would not have effected the outcome of petitioner's trial. Petitioner has failed to show that he was prejudiced by the inclusion of Detective DeRosia's testimony and/or trial counsel's failure to investigate his expert witness before trial. Therefore, the Michigan Court of Appeals reasonably found that trial counsel's errors did not have an effect on the verdict due to the overwhelming evidence presented by the prosecution. Petitioner is not entitled to habeas relief.

## IV. Conclusion

The Court will deny the petition for a writ of habeas corpus.

A habeas petitioner must receive a certificate of appealability ("COA") in order to appeal the denial of a habeas petition for relief from either a state or federal conviction.[2] 28 U.S.C. §§ 2253(c)(1)(A), (B). A court may issue a COA "only if the applicant has made a substantial

---

[2] Effective December 1, 2009, the newly created Rule 11 of the Rules Governing Section 2254 Cases in the United States District Courts, 28 U.S.C. foll. § 2254, provides that "[t]he district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant." Rule 11(a), 28 U.S.C. foll. § 2254; *See also Strayhorn v. Booker,* 718 F. Supp. 2d 846, 875 (E.D. Mich. 2010).

16

showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). When a federal district court rejects a habeas claim on the merits, the substantial showing threshold is met if the petitioner demonstrates that reasonable jurists would find the district court's assessment of the constitutional claim debatable or wrong. *See Slack v. McDaniel*, 529 U.S. 473, 484-85 (2000). This Court denies a certificate of appealability because reasonable jurists would not find this Court's assessment of the claims to be debatable or wrong. *Id.* at 484.

## V. ORDER

Based upon the foregoing, IT IS ORDERED that the petition for a writ of habeas corpus is **DENIED WITH PREJUDICE.**

IT IS FURTHER ORDERED That a certificate of appealability is **DENIED.**

S/Denise Page Hood
Denise Page Hood
Chief Judge, United States District Court

Dated: July 31, 2017

I hereby certify that a copy of the foregoing document was served upon counsel of record on July 31, 2017, by electronic and/or ordinary mail.

                         S/LaShawn R. Saulsberry
                         Case Manager